957 F.2d 446
 22 U.S.P.Q.2d 1237
 Albert I. ZAROW and Feed Pelleting, Incorporated, an
Illinois corporation, Plaintiffs-Appellants, Cross-Appellees,
v.
BETA/RAVEN INCORPORATED, a Missouri corporation,
Defendant-Appellee, Cross-Appellant,
and
Raven Industries, Incorporated, a South Dakota Corporation,
Defendant-Appellee.
 Nos. 89-1161, 89-1163.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 6, 1991.
Decided March 6, 1992.
 
 John E. Fick, Thomas Sly (argued), Samuels, Miller, Schroeder, Jackson & Sly, Decatur, Ill., for plaintiffs-appellants, cross-appellees.
 William F. Trapp, Brown, Hay & Stephens, Springfield, Ill., Richard E. Haferkamp (argued), Bryan K. Wheelock, Rogers, Howell, Moore & Haferkamp, St. Louis, Mo., for defendant-appellee.
 Before RIPPLE and KANNE, Circuit Judges, and NOLAND, Senior District Judge.*
 KANNE, Circuit Judge.
 
 
 1
 Albert I. Zarow and Jay Volk co-invented an automatic pellet producing system (Zarow patent). Volk assigned his interest in the patent to Beta St. Louis, a corporation of which he was a principal stockholder, officer and director. In September, 1977, Zarow, as licensor, and Beta St. Louis, as licensee, entered into a patent agreement in which Zarow licensed his interest in the patent to Beta St. Louis and was to receive royalties based on Beta St. Louis' sales of the product. Paragraph 6 of the patent agreement provides in relevant part:
 
 
 2
 INFRINGEMENT BY OTHERS. LICENSEE shall have the exclusive right to initiate action, suit, or otherwise proceed against others who in its judgment commit acts of infringement of said PATENT.... In the event of the initiation of any such action, suit or proceeding for infringement by LICENSEE, which shall be totally discretionary with LICENSEE, LICENSEE shall be entitled to offset all [royalty] payments from the time of the initiation of such action, suit or proceeding against any expense incurred by LICENSEE as a result thereof, including but not limited to costs and attorney's fees. Any recovery obtained as a result thereof shall be divided between LICENSOR and LICENSEE in accordance with the ratio between the expenses incurred by the LICENSOR and LICENSEE as a result of the initiation and prosecution of such action, suit or proceeding, provided, however, that the maximum recovery that LICENSOR shall receive shall be the amount of the expenses incurred by him.
 
 
 3
 In February, 1983, Beta St. Louis filed suit against Norvidan Engineering, a Denmark corporation, alleging infringement of the Zarow patent. Raven Industries, Inc., Norvidan's parent corporation and United States representative, filed a declaratory action against Beta St. Louis in the same court seeking declaration that Norvidan's product did not infringe on the Zarow patent and that the Zarow patent was invalid. The actions were consolidated.
 
 
 4
 In September 1984, the Volk family bought the Beta St. Louis Feed Mill Division assets, including the rights under the patent agreement and the right to continue the pending Raven-Norvidan litigation, and created Beta II. Beta II paid Beta St. Louis $850,000 for fixed assets, technology, patents, the Raven-Norvidan litigation and other properties. Beta II allocated $482,185 to the Zarow patent; nothing was separately allocated to the pending litigation. A month later, the Volks sold the stock of Beta II to Raven for $850,000. Beta II was renamed Beta/Raven, and the litigation against Raven was dismissed.[1]
 
 
 5
 Beta St. Louis incurred $12,487.66 in legal fees and expenses in the Norvidan suit prior to the time that Raven filed its declaratory action. It incurred an additional $75,043.70 in fees and expenses during the pendency of the Raven suit.
 
 
 6
 On February 11, 1986, Zarow filed suit against Beta/Raven seeking damages for breach of the patent agreement.[2] The district court determined that Zarow was entitled to royalties from Beta/Raven for sales of its product outside of the United States made by Beta St. Louis. The parties were unable to agree on the amount of royalties, however, and Zarow filed a motion to enforce judgment. The district court held that under the patent agreement Beta/Raven was entitled to offset the legal fees and expenses that Beta St. Louis incurred in the infringement litigation (totalling $87,531.36) against future royalties due from Beta/Raven. The court further found that resolution of the litigation by sale of the patent rights by Beta St. Louis to Beta/Raven resulted in a recovery which reduced the offset against royalties.
 
 
 7
 After further briefing by the parties, the district court determined that the recovery as contemplated by the patent agreement should bear a relation to the amount actually recoverable in the patent infringement suit. Benjamin Volk, the president of Beta St. Louis prior to the sale and president of Beta/Raven after the sale, submitted an affidavit stating that Beta St. Louis lost $22,043 in profits prior to filing suit against Norvidan. He asserted that the recovery should be limited to $11,022 because many patent infringement suits are settled at one-half of the total potential liability. In accepting this amount, the district court considered the possibility that Beta St. Louis might have lost the infringement suit. Zarow appeals the district court's limit of the recovery to $11,022, and Beta/Raven cross-appeals the finding of any recovery. We affirm.
 
 
 8
 Zarow argues that the district court improperly limited the recovery to what Beta St. Louis might have been recovered in the infringement suit, and contends that Beta St. Louis effectively recovered its $87,531 litigation expense when it sold its rights under the patent agreement and other interests in the Zarow patent to Beta/Raven for $452,185.
 
 
 9
 Although the district court agreed that some part of the $850,000 that Beta St. Louis received in exchange for certain assets was a recovery, the court found Zarow's reimbursement theory too tenuous and was unsure of the exact amount of the recovery. Because no amount was separately allocated to the pending litigation in the sale, it was reasonable for the district court to limit the recovery to the probable value of the infringement litigation. Although Zarow argues that the district court's determination as to what the amount of the recovery might have been had the litigation proceeded is speculative, Zarow has not presented an alternative method of calculating the recovery. Moreover, the dismissal of the litigation would have made any consideration of Beta St. Louis' request for treble damages, attorney's fees, interest and costs by the district court improper.
 
 
 10
 Although Beta/Raven asserts that the district court correctly calculated the amount of the recovery, Beta/Raven argues in the alternative that there was no recovery in this case. We agree with the district court's finding that the sale of the patent rights by Beta St. Louis to Beta II (Beta/Raven) resulted in a recovery which reduces the offset against royalties. Although no money was separately allocated to the pending litigation, some part of the $850,000 Beta St. Louis received was in exchange for that litigation.[3]
 
 
 11
 Beta/Raven also maintains that because the money paid to Beta/Raven (formerly Beta II) offsets the money paid by Beta II to Beta St. Louis, Beta St. Louis was the only corporation that received a net recovery, and therefore Zarow has sued the wrong party. We disagree. Just as the patent agreement entitled Beta/Raven to offset Beta St. Louis' litigation fees and expenses against future royalties and required Beta/Raven to pay royalties for sales made by Beta St. Louis, so too must Beta St. Louis' recovery be applied against the fees and expenses it incurred in the litigation.
 
 
 12
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation
 
 
 [1]
 The litigation against Norvidan was terminated when Norvidan became bankrupt
 
 
 [2]
 Zarow also alleged that Raven breached its fiduciary duties, but the allegation was stricken and Raven was dismissed from the suit
 
 
 [3]
 We reject Beta/Raven's argument that the litigation survived the sale from Beta St. Louis to Beta II. Although Beta II submitted a letter of intent stating that it would continue to prosecute the litigation, for all practical purposes the litigation had ceased